## YOUNG et al. v. COOPER.—203 S. W. (2d) 376.

Middle Section. February 1, 1947.

Petition for Certiorari denied by Supreme Court, May 31, 1947.

58

E. J. Walsh and J. G. Lackey, both of Nashville, for appellants.

Armistead, Waller, Davis & Lansden, of Nashville, for appellee.

HICKERSON, J. Edwin Young and Samuel Hillard Brown brought this suit against Robert J. Cooper to dissolve a partnership. Complainants prayed that the value of the interest of defendant in the partnership be ascertained without resorting to a sale of the partnership property; and that they be allowed to continue the operation of the partnership business and to purchase the interest of Cooper therein by paying to him the amount which the court determined to be the value of his interest.

Robert J. Cooper answered the bill and filed a cross-bill in which he prayed that the business of the partnership be liquidated, the debts be paid, and the surplus be distributed to the partners in accordance with their interest in the partnership. To liquidate the business cross-complainant prayed for the appointment of a receiver.

Young and Brown denied the right of Cooper to have the partnership business liquidated by a receiver or otherwise.

The chancellor sustained the cross-bill, granted the application for the receiver, and ordered the business of the partnership sold as a "going concern." Young and Brown were allowed to continue the operation of the partnership business pending the decision of the case in the appellate courts, if an appeal were taken.

Complainants appealed. Defendant did not. Defendant, however, has assigned errors in this court seeking to reverse certain parts of the decree of the chancery court which were adverse to him. A party, who does not appeal, may assign errors in this court, which will be considered by the court, if the appeal of the appellant is broad or general. Such assignments will not be considered by this court if the appeal is special or limited. Walsh v. Rose, 29 Tenn. App. 78, 193 S. W. (2d) 118.

The final decree in the chancery court provides: "To the foregoing action of the court in ordering a receiver, an accounting and sale, including the leases as assets and to all other action of the court in this cause adverse to the complainants, and especially to the action of the court in overruling complainants' motion for a new trial, complainants except and pray an appeal to the next term of the Court of Appeals sitting at Nashville, which appeal is by the court allowed and complainants are allowed thirty days from the entry hereof in which to make and file an appeal bond as required by law and in which to file their bill of exceptions."

The appeal in this case was special or limited, so we cannot consider the assignments filed in behalf of defendant.

We shall now dispose of the assignments filed in behalf of appellants. When reference is made to the partnership, we refer to the partnership composed of Young,

Brown, and Cooper operating under the name of Market Basket Stores, unless otherwise indicated.

The partnership was formed by written agreement to become affective August 1, 1944. The partnership business was the operation of a chain of retail grocery stores in Davidson County, Tennessee. Young had been in this business many years. Young and Brown had been partners in the same business for a few years. By the new contract, Cooper was taken into the partnership. The contract provided:

"The partnership shall be carried on under the style or firm name of the Market Basket Stores, which name is copyrighted and ownership is vested entirely in Edwin Young and Samuel Hillard Brown.

. . . . .

"(4) The said Edwin Young, Robert J. Cooper and Samuel Hillard Brown, and the survivors of them, will become and remain partners in grocery business for an indefinite term. If either partner shall desire its termination, such desire shall be given not less than three months previous notice in writing to the other partners, or shall leave such notice at the place where the said business shall for the time being be carried on.

"(5) The business of the partnership shall be carried on at the following locations in Nashville, Davidson County, Tennessee:

| | |
|---|---|
| Office and Warehouse | 126 Second Avenue North |
| Store No. 1 | 1224 Meridian Street |
| Store No. 2 | 2608 Franklin Road |
| Store No. 3 | 2024 West End Avenue |
| Store No. 4 | 2707 12th Avenue South |

and at such other place or places as the partners shall hereafter determine.

"(6) The capital of the partnership shall be Eighty-nine Thousand, Seven Hundred Eighty-four and 59/100 ($89,784.59) Dollars, to be contributed as follows:

| | |
|---|---|
| Edwin Young's capital investment, | $62,784.59 |
| Robert J. Cooper's capital investment | 17,000.00 |
| Samuel Hillard Brown's capital investment | 10,000.00 |

"The proportionate ownership of each partner is the per cent or proportion of the contributed capital of each to the total stated capitalization.

"(7) The stock in trade, accounts receivable, and all other properties, fixtures and equipment belonging to the said Edwin Young and Samuel Hillard Brown in their business known as Market Basket Stores, less their liabilities thereon, shall be valued as per inventory taken August 1, 1944, as follows:

### Assets

| | |
|---|---|
| Cash on hand | $ 630.00 |
| Cash in bank | 13,809.24 |
| Merchandise | 30,936.63 |
| Accounts receivable | 9,618.70 |
| Equipment (Store) | 32,163.23 |
| Delivery Trucks | 935.75 |
| Checks returned holding | 101.50 |
| Prepaid expense | 1,029.27 |
| Total Assets | $89,224.32 |

### Liabilities

| | |
|---|---|
| Notes payable bank | 10,000.00 |
| Accounts payable | 6,339.32 |
| Accrued taxes payable | 100.41 |
| Total Liabilities | $16,439.73 |
| Net Worth | $72,784.59 |

all of which properties are now vested in the partnership

as per this valuation and shall be credited to the said Edwin Young and Samuel Hillard Brown on the capital to be contributed by them as follows:

Credit Edwin Young in the amount of ........$62,784.59
Credit Samuel Hillard Brown in the amount of 10,000.00

"(8) The said Robert J. Cooper shall make his capital contribution in cash on or before the signing of this agreement, and its receipt is acknowledged herewith.

. .. . . .

"(21) Any partner who shall be desirous of selling his share and interest in the business shall be at liberty to do so, and shall in such case first offer such share and interest to the other partners or partner for the time being at a price to be named by the selling partner, and if the other partners or partner shall not within three calendar months accept such offer, then the selling partner shall be at liberty to sell his share and interest to any other person or persons at the same or a higher price, but shall not sell the same to any other person at a less price, unless and until it shall have been offered to the other partners or partner for the time being at such less price and such last mentioned offer shall not have been accepted within three calendar months.

"(22) Upon the dissolution of the partnership a full and general account of the assets, liabilities and transactions of the partnership shall be taken and the assets and property thereof shall, as soon as practicable, be sold, the debts due the partnership collected, the proceeds applied first in discharge of the liabilities of the partnership and the expenses of liquidating the same, and next, in payment to each partner or his representative of any unpaid interest or profits belonging to him, and of his share of the capital; and the surplus, if any, shall be

divided between the partners or their representatives on the basis of the proportion or per cent of their original capital contributed in the said partnership; and the partners or their representatives shall execute all such instruments for facilitating the collection and division of the partnership, and for their mutual indemnity and release, as may be requisite or proper.

"(23) That all disputes and differences, if any, which shall arise between the said partners shall be referred to, and decided by, three competent persons in or well acquainted with the trade, one to be chosen by either party, or by an umpire appointed by the chancellor of Part One of the Chancery Court of Davidson County, Tennessee; and their or his decision shall in all respects be final and conclusive on each of the said partners, and shall be given in writing within thirty (30) days next after such submission, or within such further times, not exceeding ninety (90) days, as they or he shall require."

The partnership business began with the operation of four stores. A central warehouse was rented for a term of three years where the bulk stock was kept and from which the merchandise was distributed to the retail stores. One new retail store was opened.

In August 1944, appellee gave appellants notice that he desired to terminate the partnership under the provisions of section 4 of the partnership contract. Appellants suggested that appellee name a selling price for his interest in the firm. Appellee named a price of $21,500. Appellants refused to give this amount, but offered to give $17,000 for his interest, plus the profits which would go to him when the partnership would be dissolved on November 30, 1945, pursuant to the notice which appellee had given.

Appellee refused to accept the offer of appellants and the present litigation resulted.

By assignments one and two appellants state that the chancellor erred in holding that the partnership owned the leases on the building where stores were operated by the partnership at 2707 Twelfth Avenue South, and 2608 Franklin Road, Nashville, Tennessee, and ordering these leases sold as partnership property.

The lease on the building located at 2707 Twelfth Avenue South stands in the name of Edwin Young and Samuel Hillard Brown by contract dated July 8, 1942. The term of this lease is from January 1, 1945 to December 31, 1949.

The lease of the building located at 2608 Franklin Road, in which the partnership operated a store, stood originally in the name of Edwin Young Stores by contract dated April 29, 1942. This lease expired July 31, 1945. A new lease of this building was executed in the name of Market Basket Stores dated January 16, 1946. The term of this lease was from August 1, 1946, to July 31, 1947. Edwin Young, Samuel Hillard Brown and Maurice M. Moxley executed the lease for Market Basket Stores.

These leases were not formally assigned to the partnership. The rent was paid, however, by the partnership. When two new buildings were needed for partnership purposes the leases on these new buildings were executed in the name of the partnership. The partnership contract provided that the business of the partnership would be conducted in the buildings covered by the two leases in question. Appellee testified he asked Mr. Young if it were necessary for him to sign the leases on the buildings used by the partnership; and Mr. Young replied that it was not. Mr. Young did not deny this statement of appellee.

No question was ever made about these leases being partnership property until appellee gave the notice to terminate the partnership. For all practical purposes they were treated as partnership property.

The notes given for the lease on the building at 2707 Twelfth Avenue South were lost and Mr. Brown requested appellee to sign duplicate notes. Mr. Young testified he did not know appellee had been requested to sign these rental notes.

■ Real estate acquired in the name of one partner for the use and benefit of the partnership is partnership property. 40 Am. Jur. 200, Partnership, section 103.

■ A partner who renews a lease, which was partnership property, in his own name, holds the same for the benefit of the partnership. Knapp v. Reed, 88 Neb. 754, 130 N. W. 430, 32 L. R. A., N. S., 869, Ann. Cas. 1912B, 1095; see annotation 32 L. R A., N. S., 869 under title, "Right of partner to Take Renewal of Lease in His Own Name and Exclude Copartner"; Mitchell v. Reed, 61 N. Y. 123, 19 Am. Rep. 252; Johnson's Appeal, 115 Pa. 129, 8 A. 36, 2 Am. St. Rep. 539.

In 40 Am. Jur. 222, Partnership, section 134, it is said:

"The principle that a partner cannot derive any benefit from the partnership relationship for himself as against his copartners prevents a partner from obtaining a renewal of a partnership lease for his own purposes to commence after the expiration of the original lease, or after the termination of the partnership. The chance or opportunity of renewal of a lease held by a partnership is considered in itself a distinct asset of the partnership in which all the partners have an interest, and consequently, in such cases the lease so taken inures to the benefit of the firm, the partner taking it holding it as a constructive trustee.

''Even if the old lease is in the name of one partner alone, he cannot, where it is affected with an equity in behalf of his copartner, secure a renewal to himself to the exclusion of his copartner, but the renewal is considered to be a graft upon the old stock. Therefore, where the rule is otherwise applicable it is immaterial that the new lease is on different terms from the old one, or for a larger rent. Even after dissolution of the partnership, the equitable expectancy of renewal remains a partnership asset for the purposes of liquidation to be taken into account and disposed of for the common benefit of the partners, and hence, a renewal after dissolution of the firm, taken by less than all the partners, inures to the benefit of the firm.''

█ The chancellor held these two leases in question (2608 Franklin Road and 2707 Twelfth Avenue South) were partnership property and ordered them sold as such. We concur in that conclusion. The very life of the partnership business depended on these leases. New leases for other buildings were taken in the partnership name. We think the partners intended for these two leases in question to be partnership property. Assignments one and two are overruled.

To eliminate the complaint which is made by appellants in assignment three, we shall consider the conversations and statements of the parties which were made prior to the execution of the partnership contract for the purpose of determining whether appellee procured appellants to execute the partnership contract through fraud; and we shall consider conversations and statements relating to the partnership business which occurred after the execution of the partnership contract to determine whether the partners modified the partnership contract. The chancellor limited this testimony to the purpose of

aiding him in construing the partnership contract. We are giving the testimony the broader consideration stated.

Assignment four is overruled because the chancellor did not consider nor sustain the plea of the statute of frauds.

By assignment five appellants state that the chancellor erred in refusing to hold that the partners modified their written contract so as to make it run for a period of three years.

Complaint is made in assignment six that appellee procured the execution of the partnership contract through fraud. Assignments five and six will be considered together. While appellants and appellee were discussing the formation of the partnership, prior to the execution of the contract, plans for the operation of the business, prospects for its success and hopes and expectations concerning its future, were considered in the conversations. It was the desire of all the parties to expand the business. As a goal, they thought they could be operating ten retail stores in three years.

Following these discussions and conversations, the formal written contract was executed which provided that either party to the contract, Young, Brown, or Cooper, might terminate the contract upon ninety days' written notice to the other parties.

After the execution of the contract, the parties continued to discuss plans for operating the business in about the same manner as they did prior to the execution of the contract; and they proceeded with the execution of those plans.

It is the general rule that dicussions, plans, statements, and agreements which lead to a written contract, are merged into the written instrument. The rule is stated in 12 Am. Jur. 756, Contracts, section 232, as fol-

lows: "In the absence of mistake or fraud, a written contract merges all prior and contemporaneous negotiations in reference to the same subject, and the whole engagement of the parties and the extent and manner of their undertaking are embraced in the writing. The written agreement, and not the correspondence which preceded it, is the correct exponent of the contract. All verbal agreements made at or before the time of the execution of a contract are to be considered as merged in the written instrument.''

 Ordinarily, representations, statements, or promises concerning future events are not actionable even though they prove to be false. A. Landreth Company v. Schevenel, 102 Tenn. 486, 52 S. W. 148.

In German-American Monogram Manufacturers v. Johnson, 133 Tenn. 571, 182 S. W. 595, 596, this rule is stated: "There is a distinction between a representation which amounts to a mere expression of intention, which though false, is not a fraud at law, and a representation which amounts to an engagement. If the representation amounts to an engagement, the party making it is bound to make it good. Kerr on Fraud and Mistake, p. 89.''

23 Am. Jur. 805, Fraud and Deceit, section 41, provides: "Fraud may, in a majority of jurisdictions, be predicated on the nonperformance of a promise in certain cases where the promise is the device to accomplish the fraud. the most frequent example of such a fraudulent promise being a promise made without any intention of performing it at the time of making it, or where a relation of trust and confidence exists between the parties. If, through inducements held out by one person, even by means of a promise alone, another is influenced to change his position so that he cannot be placed in statu quo and will be seriously damaged unless the promise is fulfilled, the re-

fusel to perform has frequently been held to constitute fraud."

A similar rule is stated in 37 C. J. S., Fraud, section 11, page 235: "Where a relation of trust and confidence exists between two parties, so that one of them places peculiar reliance in the other's trustworthiness, the latter is liable for representations as to future conduct, and not merely as to past facts."

■ The plan of the partners to expand their business so as to have ten stores in three years did not constitute a promise on their part to be bound as partners for three years when considered in connection with their written contract which provided that either partner could terminate the partnership upon ninety days' written notice to the other partners. We have no doubt the partners fully intended to remain partners for a long period of time. Usually, this is true when a partnership is formed for an indefinite period. There is no evidence of fraud on the part of any of these partners in the procuring of this contract. When they actually signed the articles of partnership they expressly reserved the right to any partner to terminate the relationship.

■ We concur in the conclusion which the chancellor reached that the partnership contract was not procured through fraud, nor modified after its execution. Assignments five and six are overruled.

■ By their assignments seven and eight, appellants complain that the chancellor refused to hold that appellee had violated "his contractual, legal, and fiduciary obligations to his copartners"; that he had wrongfully terminated the partnership; and that he was not entitled to affirmative relief under his cross-bill because he came into equity with unclean hands.

Appellants contend that appellee violated section 15 of the partnership contract while he was still a partner with appellants. This section provides that each partner shall faithfully work to promote the partnership business, and not engage in a competing business "directly or indirectly" during the continuance of the partnership. His alleged misconduct was:

(1) He approached wholesale grocery merchants in Nashville with a proposition that they support him in starting a chain of grocery stores in Nashville.

(2) Appellee showed these wholesale merchants a balance sheet of the partnership which revealed the success Market Basket Stores was having.

(3) He told his partners, as a reason for terminating the partnership, that he was offered a proposition with another concern which he could not refuse.

(4) He said there were many other reasons, in his own mind, why he wanted to dissolve the partnership; but he would not tell his partners what the reasons were.

(5) Appellee told his partners he thought their business had a very dark future.

(6) Appellee was not attentive to the partnership business after he gave the ninety day notice as he had been theretofore.

(7) He placed a selling price of $21,500 on his interest in the business which was more than appellants thought it was worth.

(8) Appellants made appellee an offer for his interest in the partnership which they thought was fair and reasonable; but he refused to accept it.

(9) While appellee was still a partner with appellants he made other preparations for opening a chain of grocery stores.

The proof shows that appellee did not open a store to compete with Market Basket Stores prior to the time this cause was tried in the chancery court.

It was in no sense disloyal to his partners for appellee to make plans to begin a future business after the partnership with appellants would be dissolved.

Quite naturally, appellee did discuss with his wholesalers the success he had been making in a similar business as an inducement for their support in the new undertaking.

It is our opinion that appellee did not have to give his partners any reason for dissolving the partnership. He had the right to do so arbitrarily.

It could hardly be maintained that the fact that appellee told his partners that the future of their business was rather dark would constitute a fraud. His partners knew as much, or more, about the future of their business than he did.

The contention that appellee did not properly attend to his duties in connection with the partnership after he gave notice to dissolve it is not supported by the proof. There was a strained relation between the parties after the notice was given which necessarily caused some changes in the operation of the business. However, appellee was paid his salary without question.

Appellee was under no obligation to sell his interest in the business to his partners at a value fixed by them; nor to wind up the partnership business on terms dictated by them.

Assignments seven and eight are overruled.

The chancellor ordered all of the property of the partnership sold, except the trade-name, which was expressly reserved. This action of the chancellor is challenged by assignment nine; it being the contention of appellants

that appellee had no interest in the good will of the partnership.

The good will of a business is the reasonable expectation of its continued profitable operation. Many factors are involved: the name of the firm, its reputation for doing business, the location, the number and character of its customers, the former success of the business, and many other elements which would be advantageous in the operation of the business. Good will is a property right which may be sold. Piggly-Wiggly Corporation v. Saunders, D. C., 1 F. (2d) 572.

One partner has no implied power to dispose of the good will of a partnership firm. Code Section 7848(3) (b).

The chancellor properly ordered all of the property of the partnership sold except the partnership name. Assignment nine is overruled.

Assignment ten: "The chancellor erred in holding that the appellee, Cooper, was entitled to any profits earned in the business subsequent to November 30, 1945; and in not holding that his only rights were those under Sec. 7877(2) (c) of the Code."

Assignment twelve:

"The chancellor erred in ordering a sale of the assets and business of the firm conducted under the name of Market Basket Stores, for the following reasons:

"a. Under a proper construction of the partnership agreement, appellee was not entitled to a sale of such assets and business.

"b. Because of appellee's many acts of misconduct, his only rights were those conferred by Sec. 7877(2) (c) of the Code."

Assignment thirteen: "The chancellor erred in refusing to ascertain the value of Cooper's partnership inter-

est, either by order of reference or by considering the proof already submitted in the cause, including Cooper's offer to sell, or by offering Cooper's interest for sale separate from the entire business.''

Assignment fourteen: ''The chancellor erred in failing and refusing to hold that the equities of the case required the protection of the complainants' eighty per cent interest, as well as the protection of defendant's eighteen per cent interest, and in refusing to ascertain and fix the value of Cooper's interest without ordering a sale of all the properties.''

These four assignments (ten, twelve, thirteen, and fourteen) will be considered together. They raise the main question in the case. A construction of the partnership contract, and an application of the Uniform Partnership Law (Code Sections 7841-7882), to the facts of the case are necessary.

These partners were operating under a written contract. ''The duties and obligations of partners arising from an actual partnership relation, however, are regulated by the express contract as far as they are touched thereby, and as regards other matters they are implied by law.'' 40 Am. Jur. 140, Partnership, section 20.

Where the express contract does not cover situations or questions which arise, they are determined under the Uniform Partnership Law which is in force in this state.

Since we have concurred in the conclusion of the chancellor that appellee did not breach his contract with appellants, nor wrongfully cause the dissolution of the partnership, Code Section 7877(2) (c), does not apply in ascertaining the value of his interest in the partnership.

There are three methods by which appellants could continue the partnership business and pay appellee his in-

terest therein: (1) if the contract so provided; (2) if appellee assigned his interest to appellants; and (3) if appellee wrongfully caused the dissolution of the partnership. Code Section 7877. But neither of these methods can be used in this case because the facts do not bring the case within either of the methods.

This partnership was terminable at will under the express provisions of section four of the contract.

In the absence of express provisions of the contract, Code Section 7870 provides: "Dissolution is caused (1) without violation of the agreement between the partners; . . . (b) by the express will of any partner when no definite term or particular undertaking is specified."

 Wherefore, we hold that appellee did have the right to dissolve the partnership at any time under the contract, or under the Uniform Partnership Law.

In the case of dissolution of the partnership, section twenty-two of the partnership contract makes provision for the liquidation thereof. The contract provides: "Upon the dissolution of the partnership a full and general account of the assets, liabilities and transactions of the partnership shall be taken and the assets and property thereof shall, as soon as practicable, be sold."

Code Section 7877(1) provides: "When dissolution is caused in any way, except in contravention of the partnership agreement, each partner, as against his copartners and all persons claiming through them in respect to their interests in the partnership, unless otherwise agreed, may have the partnership property applied to discharge its liabilities, and the surplus applied to pay in cash the net amount owing to the respective partners."

The partnership contract and the Uniform Partnership Law contain the same provisions relating to the liquida-

tion of the partnership where it was not dissolved in contravention of the partnership contract.

Section twenty-two of the partnership contract also provides the method of applying the assets of the partnership upon dissolution. It states that the proceeds shall be "applied first in discharge of the liabilities of the partnership and the expenses of liquidating the same, and next, in payment to each partner or his representative of any unpaid interest or profits belonging to him, and of his share of the capital; and the surplus, if any, shall be divided between the partners or their representatives on the basis of the proportion or per cent of their original capital contributed in the said partnership."

Code Section 7879 provides:

"Rules of distribution.—In settling the accounts, between the partners after dissolution the following rules shall be observed, subject to any agreement to the contrary:

"(a) The assets of the partnership are (1) the partnership property; (2) the contributions of the partners necessary for the payment of all the liabilities specified in clause (b) of this paragraph.

"(b) The liabilities of the partnership shall rank in order of payment, as follows: (1) those owing to creditors other than partner; (2) those owing to partners other than for capital and profits; (3) those owing to partners in respect of capital; (4) those owing to partners in respect of profits.

"(c) The assets shall be applied in the order of their declaration in clause (a) of this paragraph to the satisfaction of the liabilities."

Different rules apply when the partnership business is continued by agreement or a partner wrongfully dissolves it. Code Section 7880, Code Section 7881.

 The chancellor correctly held that appellee was entitled to his share of the partnership profits until the liquidation of the business. The fact that appellants paid $17,000 into court for the benefit of appellee does not change the rule. The chancellor held the method of dissolution, liquidation, and distribution proposed by appellants was improper; and that appellee was not compelled to accept such method, and we have concurred in that conclusion.

 To the contrary, the chancellor held that appellee was within his rights under the partnership contract in seeking a sale of the partnership business; and we concur in that conclusion. So, the continued operation of the business is being caused by appellants' contentions which are in conflict with the partnership contract. Under these facts, appellee is entitled to his part of the profits until the final distribution.

 Appellants contend appellee's rights are governed by section twenty-one of the contract. We do not think so. That section applies when a partner wants to sell his interest to a third party. Under appellants' construction of the contract a partner could not dissolve the partnership, unless he could find a third party who would buy his interest. Suppose a partner, under this contract, wanted to terminate the partnership, but had no offer from a third party to purchase his interest. Suppose further, the other partners should refuse to buy such interest at any price. Could it be said that a partner could not terminate the partnership under these conditions? Section four and section twenty-two of the contract give a partner an absolute right to terminate the partnership, at any time; and section twenty-two provides the method of liquidation and distribution. Section twenty-one in no way limits that right.

██ We agree with the chancellor that the court has no alternative under the partnership contract. The partnership business must be sold. After all is said, the controversy is this: appellants want the court, as a matter of equity, to ascertain appellee's interest in the partnership; and then let them pay him for it, and get him out. They almost concede, as indeed they must, that the contract and the provisions of the Uniform Partnership Law are contrary to their contentions.

On the other hand, appellee is simply asking the court to dissolve the partnership and liquidate the business under the provisions of the express contract which are the same as the provisions of the statutory law of this state.

██ There is no merit in the contention of appellants that they should be specially favored as an equitable matter because they own 82% of the business when appellee owns 18%; or because they took appellee into a firm which was operating an established business. When the partnership contract was executed, all partners were governed thereby. It applied alike to the old members and the new, to the member who owned a large interest in the business and to the one who owned a small interest in the business.

If Mr. Young, who owned the majority in the business, had desired to terminate the partnership, he could have done so under the terms of the contract. Appellee had the same privilege.

Assignments ten, twelve, thirteen, and fourteen are overruled.

██ We are of the opinion that appellee was not bound by the "statement of account of July 28, 1945," so as to preclude his recovery of the full value of his interest in the partnership. This account merely showed the profits and the original capital investments. It did

not take into consideration the value of the business as a going concern, exclusive of the partnership name. The eleventh assignment is overruled.

Assignment fifteen is: "The chancellor erred in not giving effect to paragraph 23 of the contract, and in not authorizing the arbitration to determine the intention of the parties when it developed in the course of the trial that there was a dispute and difference between the parties as to the intentions regarding the method of withdrawal by one of the partners."

It is our opinion that section 23 of the partnership contract does not compel the partners to submit the questions in issue in this lawsuit to arbitration. This section refers to "disputes and differences" between the partners in the operation of the business. Other sections of the contract govern when the partnership is dissolved. Assignment fifteen is overruled.

Having the view which he did, the chancellor properly appointed a receiver in this case. Whether he would appoint a receiver, and the selection of the receiver were within the sound discretion of the chancellor. It is our opinion that he properly exercised that discretion. Gibson's Suits in Chancery, 4th Ed , Higgins and Crownover, sections 892 and 902.

All assignments of error are overruled. The decree of the chancery court is affirmed. The costs of the appeal will be taxed against Edwin Young and Samuel Hillard Brown and the sureties on their appeal bond. The costs in the chancery court will be adjudged by the chancellor. Remand the cause for further proceedings.

Felts and Howell, JJ., concur.