Robert H. COWAN, Plaintiff–Appellee,

v.

John K. MADDIN, Michael Miller, and Malcolm McCune, Gracey, Maddin, Miller & McCune, a Partnership, Defendants–Appellants,

and

Richard D. Bird, Defendant.

John K. MADDIN, Jr., Michael Miller, and Malcolm McCune, d/b/a a Law Partnership known as Gracey, Maddin, Miller & McCune, Plaintiffs–Appellees,

v.

Robert H. COWAN, Defendant–Appellant,

Richard D. Bird and Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, Defendants.

Court of Appeals of Tennessee, Middle Section, at Nashville.

Nov. 17, 1989.

Application for Permission to Appeal Denied by Supreme Court March 5, 1990.

Thomas Wardlaw Steele, Nashville, for plaintiff-appellant-appellee Robert H. Cowan.

Tyree B. Harris, III, Baker, Worthington, Crossley, Stansberry & Woolf, Nashville, for defendants-appellees-appellants, John K. Maddin, Jr., et al.

## OPINION

LEWIS, Judge.

This case arose out of disagreements between members of a partnership formed for the practice of law and concerns the interpretation of the Partnership Agreement (Agreement).

As a result of the disagreements, on 1 September 1987, plaintiff Robert H. Cowan filed a complaint alleging that a law partnership known as Gracey, Maddin, Cowan and Bird, of which he was a member, had been dissolved on 29 May 1987. Joined as defendants were the remaining partners, John K. Maddin, Jr., Michael Miller, Malcolm McCune, and Richard D. Bird. Plaintiff sought to have (1) the partnership "properly wound up under the orders" of the court, (2) a Receiver appointed to wind up the business of the partnership, and (3) the Receiver make "distributions of the profits and net assets of the partnership according to the respective interests of the parties."

On 2 September 1987, John K. Maddin, Jr., Michael Miller, and Malcolm McCune, doing business as a law partnership known as Gracey, Maddin, Miller and McCune, filed a complaint against Robert H. Cowan, Richard D. Bird, and the law firm of Heiskell, Donelson, Bearman, Adams, Williams and Kirsch.[1] In their complaint, they alleged that both Robert Cowan and Richard Bird had withdrawn from the partnership and requested the court to "enter a declaratory judgment as to the fact and date of withdrawal ... from the continuing law partnership."

The cases were consolidated for trial.

1. The dispute between the original defendants, John K. Maddin, Jr., Michael Miller, Malcolm McCune and Richard Bird was settled during accounting hearings before the Special Master after the Chancellor had decided the basic issues. An order was entered dismissing the suit as to Richard Bird and Heiskell, Donelson, Bearman, Adams, Williams and Kirsch with prejudice.

Following an evidentiary hearing, the trial court found that the acts of Mr. Cowan on 29 May 1987 "constituted a withdrawal as [a] partner from the partnership and were not effective to dissolve the partnership" and that Mr. Cowan was "entitled to be paid the amounts due [him], as [a] withdrawing partner, as [of] the close of business on 29 May 1987." The court also found and decreed as follows:

In determining the amounts due and owing to Robert H. Cowan ... all prepaid expenses out of funds belonging to the partnership which were made prior to and including May 29, 1987, on cases or other legal matters where the fees to be derived therefrom, subsequent to May 29, 1987, will not be shared by [Mr.] Cowan ... shall be determined to be capital of the partnership as of the close of business on May 29, 1987, in such manner that Robert H. Cowan ... shall be entitled to receive [his] percentage thereof and [his] percentage thereof shall be added to the total amounts due and payable to [him] as [a] withdrawing partner from the partnership.

The matter was referred to a Special Master for the "purpose of taking a reporting and accounting between the parties to determine such amounts due and owing, if any, to each of said parties."

Following a hearing, the Special Master reported. Objections to the report were made by both plaintiff and defendants. The trial court modified the Special Master's Report to delete the Special Master's reference to "dissolution" and substituted the term "technical dissolution" or "withdrawal." In all other respects the report was confirmed.

The facts pertinent to our inquiry are as follows:

While Robert H. Cowan is both a plaintiff and defendant, we will hereafter refer to him as plaintiff or Mr. Cowan. John K. Maddin, Jr., Michael Miller and Malcolm McCune are both plaintiffs and defendants. However, they will hereafter be referred to by their individual names or collectively as defendants.

Mr. Cowan became associated with the law firm of Gracey, Steele and Duncan in 1954. Mr. Maddin became a partner in the firm known as Gracey, Buck, Maddin and Cowan on or about January 1, 1958. Mr. Miller became associated with firm of Gracey, Buck, Maddin and Cowan in December 1967.

On 23 April 1974, Hugh Gracey, Sr., John K. Maddin, Jr., Robert H. Cowan, Richard D. Bird, Michael Miller, and Don R. Binkley entered into a written Partnership Agreement for the practice of law under the firm name of Gracey, Maddin, Cowan and Bird.

In January or February 1976, Malcolm L. McCune became associated with the firm and on January 1, 1982, became a partner in the firm of Gracey, Maddin, Cowan and Bird. He, as did others following the original Partnership Agreement, accepted the partnership pursuant to the provisions of the Agreement without signing it.

As prescribed by the Agreement, calculations were made each year in order to determine the partners' production of fees for the preceding three years. These calculations were made in order to establish partnership percentages which were subject to the possibility of adjustments by unanimous agreement.

In November or early December 1986, the partners Hugh Gracey, Jr. and Barry L. Howard gave notice that they would leave the firm as of 31 December 1986. There were differences regarding how the terms of the Agreement should be construed but the remaining partners and Mr. Gracey and Mr. Howard negotiated their departure within the terms of the Agreement.

On 12 December 1986, Defendant Michael Miller talked with Plaintiff and told him that his insistence each year on a partnership percentage in excess of that to which he was entitled under the production formula of the Agreement was running off younger partners.

On 30 December 1986, Richard Bird submitted a handwritten document to the partnership which read:

The undersigned hereby agree to reform and establish a partnership for the general practice of law under the name of Gracey, Maddin, Cowan and Bird, beginning January 31, 1987. The terms and provisions of the partnership are to be agreed and reduced to writing by no later than April 30, 1987.

This was construed by Mr. Miller as an effort on the part of Mr. Bird to have the other partners abrogate the terms of the Agreement so that Mr. Bird could negotiate his own withdrawal without the constrictions of the Agreement. No one, other than Mr. Bird, ever signed the 30 December 1986 document.

The partnership percentages for 1986 were set on 14 January 1987. Mr. Cowan's percentage was adjusted upward from the amount determined by the three-year average formula, but was not adjusted upward as much as Mr. Cowan urged that it should have been.

Mr. Cowan expressed dissatisfaction with the percentage assigned to him for 1986 and told the other partners that he could not live with such a percentage. He further stated that he was being forced to withdraw and would submit a plan for his orderly withdrawal at a later date.

The Chancellor specifically found that Mr. Cowan's statement on 14 January 1987 was not a withdrawal from the partnership and was not a final intention of withdrawal from the partnership because it was contingent on a mutual agreement of the terms of a change in his status.

On 30 January 1987, Mr. Cowan told Mr. Miller that he was going to leave the firm and said: "You [Mr. Miller] have no future with Jack Maddin, and others have no future with Jack Maddin."

On 13 February 1987, Patrick Ruth announced that he would withdraw as a partner effective 13 March 1987. Mr. Ruth felt that it was inappropriate for him to attend partnership meetings or participate in partnership business as a withdrawing partner. The remaining partners then determined that the same should apply to Mr. Cowan, who did not disagree. Mr. Bird asked Mr. Cowan for a proposal regarding his with-

drawal within ten days. Mr. Cowan said he would do his best.

On 16 February 1987, Messrs. Maddin, Bird, Miller, McCune and Tate met to set the partnership percentages for 1987. The minutes of the 16 February meeting reflect that, because of the transitional nature of Mr. Cowan's relationship with the firm, it was specifically decided that the percentages established for Mr. Cowan was a means of calculating his compensation and setting his draw for the time he remained with the firm. It did not represent an annual partners' percentage.

On 27 February 1987, Mr. Cowan proposed at a partnership meeting that he become "Of Counsel." The remaining partners were of the opinion that this would not be an appropriate concept, and this proposal was rejected.

On 9 March 1987, Mr. Cowan submitted the plan contemplated by his 14 January 1987 announcement. This plan was that Mr. Cowan retire in accordance with the Retirement article of the Agreement.

On 27 March 1987, this proposal was rejected.

On 31 March 1987, Mr. William H. Tate, who had been a partner only since 1 January 1987, withdrew from the partnership. On that same date, Mr. Cowan suggested to Mr. Miller that the firm be dissolved.

On 3 April 1987, Mr. Cowan withdrew his "Retirement" proposal and declared that he was continuing as a partner in the firm.

On 6 April 1987, Mr. Bird and the defendants signed a bank signature card which did not include Mr. Cowan as a person with signature authority on the firm's account.

Although Mr. Cowan had stated his intention to remain as a partner, the remaining partners made no effort to notify Mr. Cowan of partnership meetings and made no effort to involve him in partnership decisions. According to Mr. Bird, defendants "were not going to accept any proposal from [Mr. Cowan] short of him leaving the firm totally." Mr. Maddin had directed the other partners not to give any further partnership information to Mr. Cowan.

In early May 1987, Mr. Miller prepared an agenda setting forth four possible methods of removing Mr. Cowan from the partnership. One of the methods considered by the defendants for removing Mr. Cowan as a partner was the dissolution of the partnership.

On 17 May 1987, Mr. Maddin traveled to Alaska to try a lawsuit, and did not return until late on 30 May 1987.

On 22 May 1987, Mr. Miller and Mr. McCune spoke with Mr. Maddin by telephone. During this telephone conference, Messrs. Maddin, Miller and McCune decided to close out the firm accounts that existed under the name of Gracey, Maddin, Cowan and Bird and transfer all the funds in Gracey, Maddin, Cowan and Bird bank accounts to bank accounts under the name of Gracey, Maddin, Miller and McCune. In accordance with that decision, by 29 May 1987, $302,406.25 was withdrawn from bank accounts of Gracey, Maddin, Cowan and Bird and placed into accounts under the name of Gracey, Maddin, Miller and McCune. This was done without the knowledge or consent of Mr. Cowan. During the period, 22 May to 29 May, some $28,000 was paid for expenses for clients or reimbursements of expenses by Mr. Maddin, Mr. Miller, and Mr. McCune.

On 11 May 1987, Heiskell, Donelson, Bearman, Adams, Williams and Kirsch voted to accept Mr. Bird as a member of the firm. On 12 May 1987, Mr. Bird disclosed that he would be leaving the firm at the end of May and would be joining Heiskel, Donaldson, Bearman, Adams, Williams and Kirsch on 1 June.

On 22 May 1987, Mr. Bird submitted a proposal for the termination of his relationship to the firm and also a proposal to implement the termination of Mr. Cowan's relationship to the firm, which Mr. Cowan had prepared and Mr. Bird had restructured.

On Tuesday, 26 May 1987, Mr. Bird told Mr. Miller that if the firm did not agree to his proposal by Friday, 29 May 1987, he was going to dissolve the law firm.

Also, on 26 May 1987, Mr. Miller and Mr. McCune transferred funds from the firm's

account on which Mr. Bird was a signator and established a $100,000 reserve account on which Mr. Bird was not a signator. Also, at this time a $30,000 draw was paid to Mr. Miller and substantial expense items were directed to be paid.

On 29 May 1987, Mr. Cowan and Mr. Bird discovered the transfer of funds which had taken place on 26 May. Mr. Bird prepared a written document purporting to dissolve the firm. He and Mr. Cowan signed it. Mr. Bird held it until he had a conversation with Mr. Miller and then delivered the dissolution document to Mr. Miller. On 29 May 1987, after receiving the document signed by Mr. Cowan and Mr. Bird, Mr. Miller and Mr. McCune transferred the remaining funds of the firm to accounts on which Mr. Bird and Mr. Cowan were not signators.

On 31 May 1987, Mr. Maddin returned from Alaska and met with Mr. Miller and Mr. McCune. They acted to establish an interest paying account to protect the interests of Mr. Cowan and Mr. Bird. The escrowed amounts were based upon calculations as to the maximum amounts to which the departing partners might become entitled. The escrowed amounts were approximately $75,000 for Mr. Bird and $30,000 for Mr. Cowan.

Suffice it to say that the record reeks of animosity between plaintiff and defendants.

Both plaintiff and defendants have appealed from the decision of the trial court. Plaintiff has presented three issues which we discuss together. They are as follows:

1. Whether Plaintiff–Appellant Robert H. Cowan had the right to dissolve the partnership of Gracey, Maddin, Cowan & Bird at will or for cause under the Uniform Partnership Act where the Partnership Agreement is completely silent on the issues of dissolution at will or for cause.

2. Whether the partnership of Gracey, Maddin, Cowan & Bird was effectively dissolved by the acts of Robert H. Cowan and Richard D. Bird in notifying their partners of dissolution of the partnership and in Robert H. Cowan's filing an action seeking a decree that the partnership was dissolved and a judicial winding up of partnership affairs.

3. Whether, since the Partnership Agreement of Gracey, Maddin, Cowan & Bird does not limit the right or power of a partner to dissolve the partnership, the Chancellor erred in failing to award Robert H. Cowan the full value of his interest in the partnership.

The Agreement provides in part as follows:

This Agreement, and as the same may be amended from time to time, shall continue for an indefinite period and shall not be terminated except in accordance with the provisions stated herein. The death, resignation, withdrawal, retirement or expulsion of a partner shall not terminate the Agreement, but the same shall continue in full force and effect for the benefit and government of the remaining Partners in a continuing law practice.

There are no other provisions in the Agreement regarding termination or dissolution.

So far as the Agreement is concerned, a partner may leave the partnership in one of the following ways: death, retirement, disability, which after a certain period amounts to retirement, expulsion or withdrawal.

■ We first address the question of whether a partner may cause an involuntary dissolution of the partnership when the Agreement is silent as to methods of dissolution.

Plaintiff relies principally on four cases, *Hoppen v. Powell*, 600 S.W.2d 736 (Tenn. App.1980), *Young v. Cooper*, 30 Tenn.App. 55, 203 S.W.2d 376 (1947), *Imperial Litho/Graphics v. M.J. Enterprises*, 152 Ariz. 68, 730 P.2d 245 (App.1986), and *Cooper v. Isaacs*, 448 F.2d 1202 (D.C.Cir.1971), in support of his argument that he is entitled to dissolve the partnership under the Uniform Partnership Act, Tenn.Code Ann. § 61–1–101 *et seq.*

In the case of *Hoppen v. Powell*, Hoppen and Powell entered into an oral partnership agreement to operate a business "selling

packaging materials." Disagreements arose between the parties and Hoppen filed suit to dissolve the partnership. "There were no provisions in the partnership agreement relative to dissolution, distribution of assets or accounting upon dissolution. Absent such agreement, the provisions of the Uniform Partnership Act apply as between the two partners." 600 S.W.2d at 738.

In *Young v. Cooper,* there was a specific provision relating to termination. "If either partner shall desire its termination, such desire shall be given not less than three months previous notice in writing to the other partners, or shall leave such notice at the place where the said business shall for the time being be carried on." 30 Tenn.App. at 62, 203 S.W.2d at 380. In *Young,* a partner who owned eighteen percent of the partnership sought to terminate the partnership. The partners who owned eighty-two percent sought to prevent termination on the ground that equity should not permit the minority party to terminate the partnership. The court held that the provisions of the partnership agreement controlled and the minority partner could cause a termination of the partnership in accordance with the agreement. *Id.* at 74–78, 203 S.W.2d at 384–386.

Neither of these Tennessee cases supports the plaintiff's argument. In *Hoppen,* there was an oral agreement with no provision for withdrawing from the partnership, terminating the partnership, or for distribution of the partnership assets. In *Young v. Cooper,* the court simply held that the partnership contract would be enforced as written, even though it might not be equitable to enforce it.

In *Imperial Litho/Graphics v. M.J. Enterprises,* the partnership agreement was "silent as to dissolution for cause and distribution of partnership assets in such a situation. The agreement only speaks to voluntary dissolution upon agreement of all partners. Moreover, the agreement [was] silent as to what constitutes a 'withdrawal' by a partner." *Id.* 152 Ariz. at 76, 730 P.2d at 253.

The *Imperial Litho/Graphics* court cited *Cooper v. Isaacs* with agreement:

True, the partnership agreement does discuss certain ways by which the partnership can be terminated and states that their partnership "shall continue until terminated as herein provided." [Citation omitted.] However, it may well be that the parties did not consider the possibility that serious disagreement would arise at the time they made the agreement; the language limiting the methods of terminating the partnership may have been intended only to prevent a partner from dissolving the partnership voluntarily and without good cause.

*Imperial Litho/Graphics,* 152 Ariz. at 76, 730 P.2d at 253 (quoting *Cooper v. Isaacs,* 448 F.2d at 1206). The Court in *Imperial Litho/Graphics* went on to hold that plaintiffs were entitled to seek judicial dissolution of the partnership agreement under the Uniform Partnership Act. *Id.*

We are of the opinion that *Imperial Litho/Graphics* is inapposite to the instant case. Here, the Agreement is not silent as to withdrawal. The original partners, including plaintiff, entered into a Partnership Agreement in 1974 which provided that the Agreement "shall continue for an indefinite period and shall not be terminated except in accordance with the provisions stated herein." It further provides that "death, resignation, withdrawal, retirement, or expulsion shall not terminate the Agreement."

Unlike the agreement in *Imperial Litho/Graphics,* the Agreement is not silent in regard to "withdrawal." The Agreement provides in unambiguous terms what a partner is entitled to receive upon "withdrawal."

Unlike the court in *Cooper v. Isaacs,* we do not feel free to speculate regarding the possibility "that the parties did not consider the possibility that serious disagreements would arise at the time they made the agreement." 448 F.2d at 1206. It is just as easy to speculate that they did consider that possibility, and that they provided for the avoidance of the termination of the partnership by stipulating "with-

drawal" as the method for unhappy or dissatisfied partners to leave without terminating the partnership.

In 59A Am.Jur.2d *Partnerships* § 521 (1987), it is said:

A partnership contract may make specific provisions for the withdrawal of a partner on stated terms, including the distribution of his proportionate share of partnership assets, or the limitation of his entitlement to only a proportionate share of undistributed profits without any other payment for his partnership interest. A partnership agreement specifying rights and liabilities of the parties on withdrawal of a partner is binding and not subject to change to the detriment of any partner except by mutual agreement. It overrides the general rules for distribution of partnership assets established by law. For example, a "dissolution" of a partnership, in an obvious attempt to circumvent one partner's exercise of his contractual right to voluntarily withdraw from the partnership and receive a disbursement of his proportionate share of partnership assets, is ineffective to retroactively change the contractual rights of the parties by ending the partnership before the effective date of the withdrawing partner's notice of withdrawal.

59A Am.Jur.2d *Partnerships* § 521 (1987) (citations omitted).

Further:

Where a partnership agreement specifically provides that the firm will not dissolve on the withdrawal of a partner, the courts recognize that the partnership continues to exist after a partner's withdrawal. A partner may not avoid a partnership agreement specifically providing that his withdrawal will not dissolve the partnership as to the remaining partners, and imposing certain limitations and conditions on a partner's withdrawal, simply by characterizing his withdrawal as a voluntary dissolution of the partnership where the effect is the same as a withdrawal.

59A Am.Jr.2d *Partnership* § 829 (1987) (citations omitted).

■ We are of the opinion, and so hold, that where a partnership agreement is entered into and specifically contemplates that the agreement shall continue until terminated and specifies the rights and liabilities of the partners on withdrawal, the agreement is binding and that this Court should not speculate that the parties did not anticipate that there would be serious disagreements between partners. If a partner wishes to leave the partnership, there is a plain and simple method provided, *i.e.,* "withdrawal." Granted, in the instant case the plaintiff would probably be better off financially if the partnership were dissolved. However, he agreed in 1974 when he entered into the partnership and signed the Agreement that if he wished to leave he would leave pursuant to the Agreement.

The record shows that partners have left the partnership over the years and all have withdrawn pursuant to the Agreement.

The Chancellor specifically found "that the provisions of the Agreement relative to the withdrawal of a partner and a continuation of the partnership have not been abrogated ... [and] ... that the terms and provisions of the partnership agreement relative to withdrawal is forceful and binding." The evidence fully supports this finding.

■ In the absence of fraud, conspiracy, or wrongdoing on the part of the remaining partners which is calculated to drive a partner from the firm to that partner's detriment, then a partner should be bound by the contract he voluntarily entered into. "[A] partner cannot, under the guise of a voluntary dissolution, avoid his contractual obligations not to compete or be paid in accordance with the partnership agreement." *Imperial Litho/Graphics v. M.J. Enterprises,* 152 Ariz at 75–76, 730 P.2d at 252–53.

■ Plaintiff insists that in any event the defendants have been guilty of a violation of their "fiduciary duty and duty of utmost good faith and loyalty to plaintiff" and that defendants' conduct has "clearly affected in a prejudicial manner the carry-

ing on of the [partnership] business." Plaintiff contends that he is therefore entitled to dissolution for one of the following causes set forth in Tenn.Code Ann. § 61-1-131(a):

(3) A partner has been guilty of such conduct as tends to affect prejudicially the carrying on of the business.

(4) A partner willfully or persistently commits a breach of the partnership agreement, or otherwise so conducts himself in matters relating to the partnership business that it is not reasonably practicable to carry on the business in partnership with him.

. . . .

(6) [Whenever] [o]ther circumstances render a dissolution equitable.

Plaintiff insists that the defendants breached their fiduciary duty when they "resolved to pay all of the firm's debts with Gracey, Maddin, Cowan & Bird, then transfer all of the remaining funds of Gracey, Maddin, Cowan & Bird into the bank accounts of a new law firm, Gracey, Maddin, Miller & McCune, without any notice whatsoever to [plaintiff] and without any effort to seek [plaintiff's] consent or make arrangements with [plaintiff] about the disposition of the partnership's property."

The trial court found in part as follows:

On May 29, 1987, both Mr. Bird and Mr. Cowan signed a memorandum stating that they were dissolving the partnership. Mr. Cowan and Mr. Bird contend that since dissolution is not covered or provided for by expressed partnership contract, they have a right to terminate, dissolve and—to terminate, dissolve the partnership and have the partnership liquidated under the Uniform Partnership Act, citing *Young versus Cooper*, [30 Tenn.App. 55] 203 S.W.2d 376, and that their memorandum signifying a dissolution and contemporaneous withdrawal constituted such dissolution. The Court does agree with the contention that if dissolution is not provided for or covered by expressed partnership contract, then the provisions of the Uniform Partnership Act are applicable and that a right exists to terminate and dissolve under the Uniform Partnership Act.

They further contend—they, that is Mr. Cowan and Mr. Bird further contend that if such act on their part did not work a dissolution, the partnership was nevertheless dissolved or they had a right to dissolve the same on account of the remaining parties transferring and/or dividing some partnership assets immediately prior to their withdrawal. As much as the Court has heretofore held that the provisions of the partnership agreement relative to withdrawal were valid and remain in force and effect at the time of the withdrawal of Mr. Cowan and Mr. Bird, the Court must now look to determine the legal effect of such withdrawal.

In *60 Am.Jr.2d* [*sic*], Partnership, Section 178 Page 97 it is said:

"Where a partnership agreement provides that the firm shall not terminate by the withdrawal of a partner, the courts will recognize that the firm continues to exist citing *Adams versus Jarvis*, 23 Wis.2d 453, 127 N.W.2d 400, holding that while the withdrawal of a partner constituted a dissolution of the partnership as to him, the agreement contemplates that the partnership would continue to exist between the remaining partners even though the personnel constituting the partnership was changed."

As the Court recalls at the pretrial conference in Cookeville, Mr. Harris spoke of a technical dissolution as opposed to a substantive dissolution. The Court is of the opinion that there can be a dissolution as to a partner without being a dissolution of the entire partnership, thus bringing about a liquidation of the partnership, partnership assets. Again, in 60 Am.Jur.2d, Partnership, Section 199 Page 112, it is said:

"While the effect of dissolution is generally to permit a partnership to operate only until it is wound up, the Uniform Partnership Act provides that when dissolution is caused in contravention of the partnership agreement"—and the Court is of the opinion that that is what occurred in this case—"the partners who

have not caused the dissolution wrongfully, if they desire to continue the business in the same name, either by themselves or jointly with others, may do so during the agreed term of the partnership and for that purpose may possess the partnership property, provided they secure the payment by bond approved by the court, or pay to any other partner who has caused the dissolution wrongfully the value of his interest in the partnership at the dissolution. And dissolution does not cause the liquidation of the firm if there has been an agreement among the parties stating that it does not do so, or if a party is expelled pursuant to the terms of the partnership agreement and if he has been paid the net amount due him from the firm and is protected from firm liabilities."

Therefore, gentlemen, it appears to the Court and the Court finds that although there is a technical dissolution or a dissolution of the partnership as to the withdrawing partners, to-wit, Mr. Cowan and Mr. Bird, inasmuch as the partnership agreement provides that the partnership will not terminate nor be—and the effect of that is that the partnership will not be liquidated, the partnership will continue for the remaining partners with Mr. Bird and Mr. Cowan paid the net amount due them from the firm and protected from firm liability.

The Court further finds and holds that the actions of the remaining partners, to-wit, Mr. Maddin, Mr. Miller and Mr. McCune in making certain payments themselves and/or transferring accounts does not change this conclusion. At the time this was done, both Mr. Cowan and Mr. Bird had expressed their intention of withdrawing from the partnership. In fact, Mr. Cowan had announced his intention to withdraw as early as January 14, 1987. On March 9th, 1987, he presented a retirement proposal which had been rejected by the partnership which he admitted was not in accordance with the terms and provisions of the partnership agreement. Prior to the transfer of the money, monies, Mr. Bird had announced his intention of leaving the firm of Gracey, Miller—the firm of Gracey, Maddin, Cowan and Bird and of joining the firm of Heiskell, Donelson, Bearman, Adams, Williams and Kirsch.

His testimony was to the effect that he first sought it with members of that latter named firm in April of 1987. I am not sure that he stated the exact date, but he recalled that it was his mother's birthday, and he went by to visit with his mother on May the 12th, 1987. Mr. Bird communicated his intention to the remaining partners, his intention of joining the law firm of Heiskell, Donelson, Bearman, Adams, Williams and Kirsch. And prior to his leaving, he was sending out mailings to his former clients on behalf of the new firm on letterheads—stationery letterheads of Maddin, Cowan, and Bird, or Gracey, Maddin, Cowan and Bird.

On May 26, 1986, at a time when Mr. Maddin was in Alaska in the trial of a death case, Mr. Bird announced to Mr. Miller and Mr. McCune, who were the only two partners left at the time in Nashville, that unless his demands for settlement on his withdrawal were met, which demands were not in accord with the terms and provisions of the 1974 partnership agreement, that unless those demands were met prior to the end of the month, he would dissolve the law firm. The Court might point out that he had submitted a settlement proposal which he had discussed with Mr. Miller. At the time it appeared that Mr. Miller felt that that proposal was reasonable, but subsequently changed his mind, he said, when he learned that Mr. Bird's time for the past some three months had not been placed in the computer.

The law firm of Gracey, Maddin, Cowan and Bird was an ongoing partnership engaged in the practice of law and such dissolution or liquidation of the firm and/or the appointment of a receiver would have—dissolution of the firm and the appointment of a receiver would have halted its operation from the practice of law and, in the Court's opinion, serious irreparable consequences would have re-

sulted. Although the accounts were transferred, escrow accounts were then set up for both Mr. Bird and Mr. Cowan in sums which the Court believes will be sufficient to compensate each of them. But if those sums are not sufficient, upon further hearing in a few moments, the Court would require a bond and/or deposit into the registry of the Court to fully secure the payment of any sums of money or the sums of money due to Mr. Cowan and to Mr. Bird.

It appears to the Court that the firm continues to be a viable and solvent firm. The Court further finds that some seven weeks before the transfer of the money, Mr. Cowan's check writing authority had been withdrawn by all the remaining partners, parties and that occurred on April 6th, 1987. So then at the time the money was transferred, both Mr. Cowan and Mr. Bird had expressed an intent to leave the firm, and Mr. Bird had expressed an intent of dissolving the firm and having a receiver appointed if his demands were not met by the end of the month or by June 1st, which deadline was near and imminent. However, for whatever materiality that it might have, sometime during this period, Mr. Bird had said to Mr. Miller and/or Mr. McCune that perhaps he had been too hasty in his statements that he made on May the 26th.

Considering all of the foregoing factors and the further factor that the Court has found ample assets and/or securities are available to secure Mr. Cowan and Mr. Bird or will be made available and that they have not, according to the proof, been subjected to any liabilities and will be protected from further liabilities, and from the consideration of the law as heretofore stated by the Court that the remaining partners may possess the partnership property provided they secure the payment due to any partner who has caused a dissolution the value of his interest in the partnership at the dissolution, and provided that the withdrawing partner be held harmless on any firm liabilities.

The Court, therefore, accordingly finds and holds that the actions of the remaining partners in transferring the funds does not constitute a dissolution requiring a subsequent appointment of a receiver and liquidation. Neither is the same grounds for such action.

Our review of the evidence fully supports the factual findings of the trial court.

Under the circumstances here, we find no derogation of the defendants' fiduciary duty of good faith to the plaintiff. Defendants' actions, taken in connection with the actions of the plaintiff and Mr. Bird, did not affect in a prejudicial manner the carrying on of the business of Gracey, Maddin, Cowan & Bird.

The three issues raised by plaintiff are without merit.

■ We next discuss the issue presented by the defendants, which is: "Whether, under the Partnership Agreement before the Court, a withdrawing partner is entitled to share in the firm's recoupment, after his withdrawal, of expenses advanced while he was a partner."

The Partnership Agreement provides that a withdrawing partner shall be entitled to receive the following:

1. His distributive share of the net partnership income to the effective date of withdrawal.

2. An amount equal to his cash capital account and his share of the tangible assets of the firm at the then existing book value thereof. The amount of value for tangible assets may be paid out over a period of one (1) year from the withdrawal at the option of the remaining partners.

3. The withdrawing partner may take the files of any client or matter desiring to be represented by the withdrawing partner. In the event the remaining partners elect to allow a withdrawing partner to continue a matter or file in progress, the fee therefrom shall be divided as agreed.

4. As of the effective date of withdrawal, the withdrawing partner shall have no further interest or right in the

accounts receivable or matters in progress belonging to the firm, and he shall have no further responsibilities for the obligations incurred by the firm and after the date of withdrawal.

The Chancellor, after declaring that plaintiff had withdrawn from the partnership effective 29 May 1987,[2] found that the prepaid expenses of any case still in progress would "be required to be considered as partnership capital or as a part of the capital of the partnership." The Chancellor further found that, as a withdrawing partner, plaintiff was entitled to share in those prepaid expenses as they were collected.

The only proof at trial concerning the application of the Agreement regarding withdrawing partners was that the Agreement had always been followed. There was no proof regarding whether a withdrawing partner was entitled to share in the recoupment of prepaid expenses of a case in progress as of the date of withdrawal.

The Chancellor, in deciding that the withdrawing partner was entitled to share in the recoupment of prepaid expenses, observed that prepaid expenses were not listed among those items to which a withdrawing partner would be entitled to share. However, the Chancellor stated that "the Court is of the opinion that this is equitable and that would just be a reasonable thing to do—just wouldn't be assumed or presumed that expenses would be prepaid, although the Court practiced law long enough to know that sometimes in lawsuits you have to prepay certain expenses."

On reference to the Special Master, proof was taken regarding the manner in which the partnership had treated prepaid expenses. Mr. Van Horseman, a certified public Accountant, was retained in 1987 to do accounting work for the firm. Mr. Van Horseman testified as follows: Nineteen eighty-seven was the first year he had been retained to do work for the partnership; he had reviewed the records of the firm and,

historically, so far as prepaid or advance expenses were concerned, they were expensed in the year incurred. Mr. Van Horseman stated that

the net effect of expenses then was, number 1, it allowed a deduction in a current year. Then when those expenses were subsequently billed to the client, they were brought directly into revenue.

The effect of expensing them reduced the net income in the operation for that given year. The bottom line, the net income of the firm and the net income that was prorated to each partner was reduced by his proportional share of those expenses.

He further testified that when advanced expenses were paid to the partnership in a later year it was brought directly into the firm and those partners who shared in the recoupment recognized and paid taxes on it as ordinary income.

Mr. George Price, the partnership accountant from inception of the partnership in 1974 until 1987, testified as follows:

Q. Mr. Price, as I understand it, I want to see if this is true since you started in 1974, the advances were charged off as expenses, is that correct?

A. Yes. They was picked up on the monthly profit and loss statement as an expense, that's correct.

Q. And were not carried as an asset of the firm?

A. No.

Q. And then when they were collected, they went under income?

A. It came back in income, that's correct.

Q. Just as any other work in progress?

A. Right.

Q. So there was never any accounts receivable on the books?

A. No. At the end of the year there was—as far as I know there was no determination made to pick up on a tax return that particular figure.

Q. And that was perfectly legal?

2. Defendants had taken the position in the trial court that plaintiff had withdrawn from the partnership at an earlier date. Defendants have abandoned that position on appeal and, therefore, for all purposes the date of 29 May 1987 is the date of plaintiff's withdrawal.

A. Yes.

Q. For tax purposes?

A. Right.

Q. You could charge them off and—

A. Recoup.

Q. And when you recoup, you had to pay income tax on it?

A. Right.

Q. Just like any other income?

A. That's right.

Q. And that was done the entire time that you worked for the firm?

A. Every year.

Mr. Richard Bird, a former partner, testified that advance expenses were handled as the accountants had stated.

There was no other proof on this issue. So far as the record shows, advance expenses were treated "just as any other work in progress."

The Agreement specifically states that "as of the effective date of withdrawal, the withdrawing partner shall have no further interest or right in the accounts receivable or matters in progress belonging to the firm."

The partnership had from its inception treated prepaid expenses as "work in progress." They were expensed in the year paid and the partners received the benefit in that year. They were treated as ordinary income in the year received and those who were partners in that year received the benefit.

It is not inequitable to plaintiff to continue treating prepaid expenses in the same manner as those expenses had been treated from 1974. Plaintiff has had the benefit of that treatment over the years when others withdrew from the partnership.

While findings of fact of the trial court in civil actions are "accompanied by a presumption of their correctness" on appeal to this Court, Tenn.R.App.P. 13(d), the conclusions of the trial judge based on those facts

bear no such presumption. The Chancellor's conclusion that it would be inequitable for plaintiff not to share in the recoupment of prepaid expenses is not supported by the facts.

Plaintiff argues that under the Code of Professional Responsibility, it is improper to make advances except as loans to a client whose only way to pursue his action is by such advance, Code of Professional Responsibility EC 5–8, and that the manner in which the partnership had been treating expenses advanced to a client is a violation of EC 5–8. Without agreeing or disagreeing with this argument, we hold that even if the advance expenses are characterized as a loan rather than work in progress, the outcome is not changed. A loan is necessarily an account receivable and a withdrawing partner has no interest or right in an account receivable.

We are of the opinion that the Chancellor erred in holding that the plaintiff was entitled as a withdrawing partner to an interest in expenses advanced to the date of withdrawal which were to be collected after that date. This issue is sustained.

The judgment of the Chancellor in holding that plaintiff was entitled to share in the firm's recoupment after his withdrawal of expenses advanced while he was a partner is reversed. In all other respects the judgment of the Chancellor is affirmed and the cause remanded to the trial court for the collection of costs, which are assessed to plaintiff, and for any further necessary proceedings.

CANTRELL and KOCH, JJ., concur.