IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 9, 2001 Session

## LOUIS A. BRUNSTING, III, M.D., ET AL. v. PHILLIP P. BROWN, M.D., ET AL.

Appeal from the Chancery Court for Davidson County
No. 98-663-I     Irvin H. Kilcrease, Jr., Chancellor

No. M2000-00888-COA-R3-CV - Filed October 4, 2001

Four physicians formed a PLLC. Eventually personal and professional conflicts arose. Various claims were asserted that Drs. Brown and Barton had violated the Operating Agreement of the PLLC; Dr. Brunsting sought declaratory relief, and monetary damages for breaches of contract and fiduciary duty; Dr. Rankin alleged that Drs. Brown and Barton had effectively withdrawn from the PLLC. The Chancellor found the Drs. Brown and Barton by their actions constructively withdrew from the PLLC which he declined to dissolve. The fees awarded to the plaintiff's attorneys are the principal issue on appeal, together with issues involving the continuing viability of the PLLC.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM H. INMAN, SR. J., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, J.J., joined.

Clarence J. Gideon, Jr. and Thomas A. Wiseman, III, Nashville, Tennessee, for the appellants, Phillip P. Brown, M.D. and Ben R. Barton, M.D.

William T. Ramsey and A. Scott Ross, Nashville, Tennessee, for the appellee, Louis A. Brunsting, III, M.D.

Robert E. Parker and Garrett E. Asher, Nashville, Tennessee, for the appellee, J. Scott Rankin, M.D.

### OPINION

### The Complaint

Dr. Louis Brunsting alleged that, effective March 1, 1996 he and Drs. Rankin, Brown, and Barton formed a PLLC known as Cardiothoracic Surgery Associates [CSA] under the terms of an Operating Agreement which included these provisions:

(a)     Members agree not to practice medicine outside the operations of CSA.

(b)     Members pay an equal share of common expenses such as office rent, shared employee salaries, office supplies, but members are to pay their own personal expenses such as malpractice insurance, and office furniture.

(c)     Members' income is based on productivity within an agreed upon, written goal to equalize reimbursement by an equal distribution of cases.

(d)     Most decisions to change the Operating Agreement require a two-thirds majority vote of the members.

(e)     The hiring of new partners and/or entering into new contracts requires a vote of all members, less one.

(f)     Changing the mechanism to distribute income among members requires a unanimous vote.

(g)     All members, less one, have the ability to vote out any single partner without cause.

The plaintiff alleged that Drs. Brown and Barton failed to assign to CSA certain office leases they owned as required by the Operating Agreement, notwithstanding that CSA was making the rental payments. Conflicts developed and in December 1997 Dr. Brown notified Drs. Brunsting and Rankin that he wanted to dissolve CSA.

Dr. Brown assigned surgical cases within CSA. The plaintiff alleged that for eighteen months the case assignments did not afford parity to the members of the PLLC thus resulting in an uneven distribution which affected cash flow and hampered the development of reputations.

The complaint further alleged that:

(1)     On January 12, 1998, Drs. Brown and Barton stated that they did not wish to continue practicing with CSA.

(2)     On January 16, 1998, the plaintiff received a letter from Drs. Brown and Barton requesting that he and Dr. Rankin vacate the CSA office space by February 1, 1998.

(3)     On January 16, 1998, Drs. Brown and Barton notified the CSA business manager that they were changing their billings to an outside service.

(4)     Drs. Brown and Barton intended to partition the assets of CSA, and deliberately took actions contrary to the Operating Agreement in reckless disregard of patient-care issues.

-2-

(5)     Drs. Brown and Barton refused to be on-call for patients of the plaintiff and Dr. Rankin.

(6)     Drs. Barton and Brown are attempting to expel the plaintiff and Dr. Rankin from CSA in violation of the Operating Agreement, and that they have violated other provision of the Operating Agreement.

(7)     That Section 11.4 of the Operating Agreement provides:

As a material inducement of each Member to execute this Agreement, each Member covenants and represents to each other Member that, during the period beginning on the date of this Agreement and ending on December 31, 2035, no Member, nor his or her heirs, representatives, successors, transferees, or assigns, shall attempt to make any partition whatever of any Company assets whether now owned or hereafter acquired, and each Member waives all rights of partition provided by statute or principles of law or equity, including partition in kind or partition by sale. The Members agree that irreparable damage would be done to the goodwill and reputation of the Company if any Member should bring an action in a court to dissolve the Company. The members agree that there are fair and just provision for payment and liquidation of the interest of any Member, and fair and just provisions to prevent a Member from selling or otherwise alienating such Member's interest in the Company. Accordingly, each Member hereby waives and renounces his or her right to such a court decree of dissolution or to seek the appointment by court of a liquidator or receiver for the Company.

The plaintiff sought a declaratory judgment that the provisions of the Operating Agreement are enforceable, that CSA may not be partitioned or dissolved unless all members agree, and that if Drs. Brown and Barton no longer wish to practice with CSA, they should resign.

The plaintiff alleged that Drs. Brown and Barton breached the terms of the Operating Agreement which resulted in damages by the plaintiff for which he seeks recompense including attorneys fees as provided for in the Operating Agreement.

The plaintiff further alleged that Drs. Brown and Barton breached their fiduciary duty under the Tennessee Limited Liability Act, thus entitling him to damages.

The affirmative relief sought was:
        (a)     A declaratory judgment as alleged;
        (b)     Monetary damages and attorneys' fees.

## The Answer

Drs. Brown and Barton moved to dismiss because the plaintiff failed to join Dr. Rankin as an indispensable party.[1]  Most of the allegations of the complaint were denied.  They denied the allegation that surgical cases were unevenly assigned, asserting that patient cases are generally based upon the referral of another physician to another specific physician.  The defendants alleged that the complaint should be dismissed for failure to state a claim; that the public policy of Tennessee permits judicial dissolution of CSA, the most viable way to resolve the dispute; that the plaintiff breached the Operating Agreement by self-dealing and has engaged in a pattern of unauthorized transactions, thereby entitling the defendants to damages.

## The Counter Complaint

Drs. Barton and Brown counter claimed against Dr. Brunsting, alleging that in November and December 1997 he began to secretly investigate leaving the practice of CSA and set up a private medical practice, and admitted that he wanted to leave the practice and promote himself.  Conflicts abounded, according to the counter claimants, all resulting in breaches of the Operating Agreement by the plaintiff, and thus CSA should be dissolved, together with an award of damages and attorney fees.

## The Answer to the Counter Complaint

Dr. Brunsting admitted that he discussed with various physicians and staff the possibility that he might resign from CSA, and generally denied the allegations of the counter complaint.

## The Judgment

1.     Judicial dissolution was denied.
2.     Drs. Brown and Barton were declared to have constructively withdrawn from the PLLC.
3.     The Centennial office space is not an asset of the PLLC.
4.     Drs. Brown and Barton did not breach the Operating Agreement.
5.     Drs. Brown and Barton did not breach their fiduciary duties to the PLLC.
6.     Dr. Brunsting did not breach his fiduciary duty to the PLLC.
7.     Dr. Brunsting did not breach his fiduciary duty to Drs. Brown and Barton.

Pursuant to a litany of motions and orders, Drs. Brunsting and Rankin were awarded, respectively, $225,611.29 and $80,130.90 for attorney fees, assessed against Drs. Brown and Barton whose application for attorney fees was denied.  The issues on appeal are (1) whether the Chancellor erred in finding that Drs. Brown and Barton constructively withdrew from the PLLC, (2) whether the PLLC should have been judicially dissolved, (3) whether attorney fees should have been awarded.  Review is *de novo* on the record with a presumption that factual findings are correct unless

---

[1]  Dr. Rankin was thereafter joined as a plaintiff.

the evidence otherwise preponderates. Rule 13(d) T.R.A.P. There is no presumption of correctness as to questions of law.

## Analysis

Personal and professional conflicts arose within this PLLC: two members essentially against two members. It would not be productive to record the myriad instances of discord, disagreement, and dissension between the members. After five days of testimony the Chancellor was enabled to weigh and gauge its worth and weight to an extent not achievable by this Court, which is limited to the printed word. So it is essential to repeat the venerable principle that with respect to the vital element of credibility in the decisional process, we must defer to the fact finder who heard, observed, and evaluated the witnesses.

## Dissolution

Section 11.4 of the Operating Agreement prohibits dissolution by judicial action. Both sides acknowledge this fact. But the defendants, Drs. Brown and Barton, argue that T.C.A. § 48-245-902 authorizes a court to dissolve the PLLC on equitable grounds. The Chancellor considered the statutory authority to decree an equitable dissolution if it is not reasonably practical for the PLLC to carry on the business in conformity with the Operating Agreement, and concluded that an equitable dissolution was inappropriate, pointing out that the stated purpose of the PLLC shall be to render medical services in Tennessee and elsewhere, and that the rendering of such services can continue "absent certain members." This record is voluminous, and we have carefully sifted it; we do not find that the evidence preponderates against the finding that it is reasonably practical for the PLLC to continue to carry on the business of rendering medical services.

We note that the Operating Agreement provides that a member may resign upon written notice to other members, all of whom agreed upon the compensation a resigned member would be entitled to receive. Thus, the Operating Agreement envisioned continuation of the PLLC without all signing members. We further note the significant fact found by the Chancellor that Drs. Brown and Barton resolved to "circumvent the constructs of the Agreement by forcing a dissolution." This finding, which is not seriously disputed, strongly influences the conclusion that judicial dissolution may not be ordered. The evidence does not preponderate against the finding of the Chancellor that a judicial dissolution of the PLLC is not appropriate.[2]

## Constructive Withdrawal

---

[2] The procedure for the judicial dissolution of a PLLC is found in T.C.A. § 48-245-903. *Inter alia*, the statutory scheme requires the posting of a bond to cover the defendant's probable costs, including reasonable attorney's fees. This bond was not posted.

The appellants argue that the Chancellor had three potential solutions to the PLLC schism: maintain the status quo, judicial dissolution, or adopt the constructive withdrawal claim. The Chancellor found that Drs. Brown and Barton constructively withdrew from the PLLC because they contracted with an outside firm to bill patients, they refused to share call, they asked Dr. Brunsting to vacate the principal business office, they refused to allow Dr. Rankin to move the St. Thomas office to the Centennial office as agreed, and they refused to meet with Drs. Brunsting and Rankin to "discuss these matters."

The Chancellor made a specific factual finding that Drs. Brown and Barton intended to "circumvent the constructs of the Agreement by forcing a dissolution," noting that Dr. Barton admitted that "all of the January events were in an effort to dissolve the PLLC," and that the decision to stop sharing call duty was part of "wanting to separate ourselves from them." He further noted that Dr. Brown's actions and statements were similar to those of Dr. Barton. These findings are documented in the record, and hardly admit of any reasonable conclusion other than as determined by the Chancellor.

The trial court found, as we have noted, that the actions by Drs. Brown and Barton were taken to circumvent the constructs of the Operating Agreement and to force a dissolution.

> It is obvious that the defendants [Dr. Brown and Dr. Barton] are attempting to circumvent the constructs of the Agreement by forcing a dissolution. For example, defendants removed their billing from the inside billing practices of the PLLC to an outside billing management firm. They also refused to share call; advised Dr. Brunsting to vacate the principal business office; refused to allow Dr. Rankin to relocate the St. Thomas office to the Centennial office as previously agreed and; refused to meet with the plaintiffs to discuss these matters. In addition, the defendants suggested dissolution at the January 12, 1998 meeting and reiterated their position in a January 16, 1998 letter forwarded to Dr. Brunsting.
>
> Moreover, defendant Dr. Barton testified that they (Dr. Barton and Dr. Brown) were trying to separate themselves and that 'he wanted to see if lawyers could get him out of the March 1, 1996 Operating Agreement.' See Barton Dep. At 175:5-6. Defendant Dr. Brown also testified that he and Dr. Barton where [sic] trying to separate themselves from the other members and that it was not a coincidence that he removed his billing soon after he suggested dissolution. See Brown Dep. At 29:1-11.
>
> Therefore, after careful consideration of all the facts, this Court is of the opinion that the defendants constructively withdrew from the PLLC.

Drs. Brown and Barton do not dispute these findings. They rationalize their actions by arguing that the Operating Agreement did not forbid them from trying to separate themselves from the PLLC in this manner. They argue that the reason why they arranged for Medical Management to process their billing was because there had been errors in prior billings, although neither had ever suggested the switching of billings to another source.

Drs. Brown and Barton rationalize their refusing to share call with the other members of the PLLC by insisting that being a member of the PLLC did not require the sharing of on-call duty. The proof indicated that from the formation of the PLLC until Drs. Brown and Barton refused to do so, the members of the PLLC shared call with each other. It is significant that not only did Drs. Brown and Barton refuse to share call as they had done during the years prior, they specifically entered into a call sharing arrangement with a physician *outside* of the group.

Dr. Barton admitted that he and Dr. Brown sought to force a dissolution instead of following the Operating Agreement. Dr. Barton testified that he and Dr. Brown "were unwilling to take this [the Operating Agreement] at face value without spending more money with attorneys to see if there was a way to dissolve it."

*Cowan v. Maddin*, 786 S.W.2d 657 (Tenn. Ct. App. 1989) involved a Nashville law partnership formerly known as Gracey, Madden, Cowan & Bird. The Partnership Agreement in *Cowan* provided for the withdrawal of a partner, and stated that withdrawal would not result in a dissolution of the partnership. The Partnership Agreement contained terms of what a withdrawing partner is entitled to receive upon withdrawal. After months of dispute among the partners, two of them decided that they wished to separate from the partnership. Instead of withdrawing according to the terms of the Agreement, however, the two, Mr. Cowan and Mr. Bird, served documents purporting to dissolve the firm. The Chancery Court rejected this attempt to circumvent the Agreement's withdrawal provision. It further held that the acts actually constituted a withdrawal as a partner from the partnership. This judgment was affirmed.

The evidence does not preponderate against the findings that Drs. Brown and Barton constructively withdrew from the PLLC.

## The Attorney Fees

The Chancellor was inundated on this issue with post-trial proposed findings of fact and conclusions of law, again in connection with a post-trial motion to alter or amend, again following a protracted hearing on the precise issue, and yet again following the hearing. The award of attorney fees is reviewed under the abuse of discretion standard. *See, Albright v. Mercer*, 945 S.W.2d 749, (Tenn. Ct. App. 1996).

At the outset, we note that neither the reasonableness nor the amount of the fees is questioned on appeal.[3] The appellants insist that *no* fees should have been awarded because the Chancellor allowed equitable relief only. Secondarily, we note that the hereinafter quoted contractual provision is an exception to the Rule against awarding attorney fees to successful litigants. **Goings v. Aetna C & S. Co.**, 491 S.W.2d 847 (Tenn. Ct. App. 1972).

### As to Dr. Brunsting

Section 12.4 of the Operating Agreement provides:

> In the event any party hereto fails to perform any of its obligations under this Agreement or in the event a dispute arises concerning the meaning or interpretation of any provision of this Agreement, the defaulting party or the party not prevailing in such dispute, as the case may be, shall pay all costs and expenses incurred by the other party in enforcing or establishing its rights hereunder, including, without limitation, court costs and reasonable attorneys' fees.

The defendants' principal argument in opposition to the allowance of this fee is based on the assertions that Dr. Brunsting did not prevail on all of his claims, and that he is entitled to recover only those fees which can be attributed to claims upon which he prevailed. The Chancellor rejected this argument because all of the claims and counterclaims "arose from a common core of facts," and that the plaintiff's case could not be evaluated as a series of discrete claims. A secondary argument posited against the award of fees is that the Operating Agreement does not provide for attorney fees where only equitable relief is awarded.

A contract for attorney fees should be construed as any other contract. *See,* **Alexander v. Inman**, 903 S.W.2d 686 (Tenn. Ct. App. 1995). Parsing the contract in the case at Bar, it provides that the party not prevailing in a dispute concerning the meaning or interpretation of any provision of the Agreement shall pay the fees of the other party in enforcing or establishing its rights under the Agreement. This is heady language, broad and sweeping, and clearly encompasses equitable relief. A further parsing of the contract reveals an additional, or alternate, provision for the allowance of fees: a defaulting party is one who fails to perform any obligation required by the Agreement and is liable to the other party for fees incurred in enforcing or establishing his rights.

Drs. Brown and Barton argue that the plaintiff claimed that they violated the Agreement or acted improperly in ten separate instances, viz.:

1.      Drs. Barton and Brown decided to hire Medical Management of Nashville, Inc., to perform billing services for their practice billings.

---

[3] Conceded in oral argument.

2. Drs. Barton and Brown treated patients with "reckless" disregard and/or disrupting services to patients and the medical community generally.

3. Drs. Barton and Brown breached Section 4.1(e) of the Operating Agreement regarding equalization of expected reimbursement.

4. Drs. Brown and Barton assigned or subleased the lease for office space at Centennial Medical Center to the PLLC when it was formed and therefore could not claim it as an asset of any other entity.

5. Dr. Rankin had a right to install a new telephone line.

6. Drs. Barton and Brown breached their fiduciary duty to the other members of the PLLC and to the PLLC itself.

7. Dr. Brunsting was entitled to $1,256,318 in monetary damages.

8. Drs. Brunsting and Rankin were entitled to damages because Drs. Brown and Barton did not continue to take weekend call.

9. Drs. Barton and Brown breached the Operating Agreement by seeking judicial dissolution of the PLLC.

10. Dr. Barton and Brown constructively withdrew from the PLLC.

The argument continues that of these ten claims asserted by the plaintiff against Drs. Brown and Barton the Chancellor ruled in favor of Drs. Brown and Barton on every issue, save the constructive withdrawal claim. Stated differently, that Drs. Brown and Barton prevailed on 90 percent of the claims, and should, therefore, not be liable for 100 percent of the plaintiff's legal expenses. While the plaintiffs lost some fact-based battles, they won the war and hence emerged as the prevailing party.

Drs. Brown and Barton counterclaimed against Dr. Brunsting, as we have noted, asserting that he breached the Operating Agreement, and breached his fiduciary duty of the PLLC, in about eleven instances. All of these claims were decided favorably to Dr. Brunsting.

The pleadings are exceedingly prolix. The parties essentially pleaded their evidence, which eventually segued into disputed factual issues, some of which were dispositive, others of little import. For instance, the purported issue of whether Dr. Brunsting had a right to install a telephone line required an interpretation of the Operating Agreement thus triggering the application of the attorney fee provision, albeit with little or no impact on the adjudication of the relief sought.

The Chancellor determined that Dr. Brunsting filed this action to enforce his right to continue practicing in the PLLC in "light of the defendants' constructive withdrawal" therefrom. The argument that the finding of constructive withdrawal by Drs. Brown and Barton was the sole issue affirmatively adjudicated is, in a narrow sense, correct; but all of the contested issues, whether dispositive or not, were adjudicated, either on the basis of preponderant proof or failure of proof. Dr. Brunsting was the prevailing party on a dispositive issue for which he had the burden of proof, and he was the prevailing party on all of the counter claims asserted by Drs. Brown and Barton. The contract provides for fees incurred (1) in enforcing or establishing rights under the Agreement, and (2) in any dispute over the meaning or interpretation of the Agreement. We agree with the appellees that declaratory and injunctive relief are primary methods to enforce a contracted provision or resolve a disputed interpretation of it. The Chancellor found that Dr. Brunsting took this action, and we cannot find that the evidence preponderates against his conclusion.

We have considered the remaining arguments directed to the alleged error in awarding attorney fees to Dr. Brunsting, and have determined that none of them has merit.

We find no abuse of discretion on the part of the Chancellor in awarding Dr. Brunsting his attorneys' fees.

### As to Dr. Rankin

The brief submitted on behalf of Dr. Rankin contains a pithy summary which is worth repeating:

> Generally, when an employee no longer wants to work for a company, the employee resigns his or her position and goes elsewhere. When a shareholder no longer wants to be associated with a corporation, the shareholder sells his or her shares. When a partner in a general partnership, such as a law firm, no longer wants to be associated with the firm, the partner withdraws. Similarly, a physician member of a PLLC who no longer wishes to practice with his partners resigns and works elsewhere or on his own.

The extensive record in this case reveals that counsel's time was devoted to the litigation as a whole. As the Chancellor found, there was a common core of facts involved, and such a lawsuit cannot be viewed as a series of discrete claims.

We have considered the proportionality argument of the defendants at length. *See, JDFJ Corp. v. International Racing, Inc.*, 870 P 2n 343. (Wash. App. 1999). We do not disagree with the reasoning of the Washington Court that "when a case consists of distinct and severable claims the Courts must apply a proportionality approach" that is, the fees awarded to the plaintiff's attorney for the claims it prevailed upon must be offset from those awarded to the defendant on its prevailing claims. But in the case at Bar, the "claims" were not discrete; they formed a pattern of conduct

designed for a single purpose. Consequently, we must look at the case as a whole, and not one broken down into segments.

Both sides of this litigation have referred us to the recent case of **Beaty v. McGraw**, 15 S.W.3d 819 (Tenn. Ct. App. 1998) which involved, *inter alia*, an issue of attorney fees governed by T.C.A. § 29-30-110 which allows fees as exemplary damages for the wrongful suing out of a possessory action. The counsel claiming fees defended a breach of contract action and simultaneously prosecuted a wrongful possession claim. Part of their work was defensive and part offensive, each easily identifiable. We remanded the case for a determination of the time "spent on the wrongful possession claim" as authorized by statute. **Beaty** is inapposite to the case at Bar.

We cannot find that the Chancellor abused his discretion in the award to Dr. Rankin of his attorneys' fees. The judgment is accordingly affirmed. Costs are assessed to appellants and the case is remanded for all appropriate purposes.

_____
WILLIAM H. INMAN, SENIOR JUDGE